**Arque Lavann GRAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–170–CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 19, 1991.

Rehearing Overruled Jan. 16, 1992.

Greg Glass, Herb H. Ritchie, Ritchie & Glass, Houston, for appellant.

John D. Holmes, Dist. Atty., Houston, for appellee.

Before NYE, C.J. and SEERDEN and BISSETT[1], JJ.

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.

## OPINION

NYE, Chief Justice.

Appellant, Arque Lavann Gray, was charged in a two-paragraph indictment for possession of less than 28 grams of cocaine, and for possession with intent to deliver less than 28 grams of cocaine. He filed a motion to suppress all evidence gained from his arrest and ensuing search and seizure. After a hearing, the trial court denied his motion to suppress. Pursuant to a plea bargain, he pleaded guilty to the possession charge, reserving his right to appeal the denial of his motion to suppress. The trial court assessed punishment at three years in prison. By two points of error, appellant complains that the trial court erred in denying his motion to suppress, arguing that the police arrested him as a pretext to search him. He attacks the trial court's ruling under the Fourth Amendment of the United States Constitution and art. 1, § 9 of the Texas Constitution. We affirm.

During the hearing on the motion to suppress, the State called as a witness, Officer S.W. Shuman. The defense called as witnesses, Officer J.R. Cones, Jacquelyn Routt, and appellant. Shuman and Cones were Houston police officers.

Viewing the evidence in the light most favorable to the prosecution, Officer Cones testified that he and his partner, Officer Shuman, were assigned to the Zero Tolerance Narcotic Hot Spot Squad (the "Squad"). Cones said that officers who were assigned to the Squad drove marked police cars and patrolled various areas in Houston which had drug problems and that they enforced all laws, including all traffic laws, in those areas. He said that this was an attempt to prevent people who buy drugs from coming into those areas. Cones said that the Squad's purpose was not to use traffic stops to locate and arrest possible drug offenders.

Cones testified that in April of 1990, he and Shuman were riding in a marked police

Gov't Code Ann. § 74.003 (Vernon 1988).

car with a light bar on top. Cones, who was driving, said that as he nearly came to a stop at the intersection of 40½ Street and North Main Street, he saw appellant driving a motorcycle, which turned east onto 40½. Cones said that it was his idea to follow appellant because his motorcycle had a faded dealer tag, which appeared old (Cones said that he could not see the tag's date) and that appellant had speeded up and was exceeding the 30 mile-per-hour speed limit. Cones said that he tried to catch up to appellant. Cones said that appellant turned around and looked at them and that all of a sudden, appellant swerved to the right, drove off the shoulder of the road (on the dirt part) in order to quickly pass a car in front of him, and accelerated. Cones pursued appellant and saw him quickly turn into the driveway of a house, rush to the house's front door, and knock on the door. Cones testified that as soon as he and Shuman stopped appellant, appellant would be arrested for the traffic violations and for "fleeing." Cones said that Shuman arrested appellant. Cones said that he did not use traffic stops to check on people whom he felt were drug offenders and that he did not stop appellant because he felt that appellant was a drug offender.

Officer Shuman testified that when he and Cones were pursuing appellant, they were trying to get a closer look at the motorcycle's inspection sticker. Appellant, however, drove off of the shoulder and passed two cars. Shuman said that at this point, he and Cones decided to stop appellant solely for the passing, which Shuman testified was illegal. Shuman briefly turned on the car's emergency lights. Shuman opined that considering the way appellant looked back at them, appellant had seen them and was trying to evade them. Shuman said that when he got out of the car to arrest appellant, he saw appellant banging on the house's front door and hollering that he wanted inside. When he got close to appellant, he saw that appellant had a plastic baggie in his right hand and that the baggie contained some lighter-colored objects. Shuman suspected that the baggie could have contained drugs. He

saw appellant put the baggie into a black-colored pouch, which was around appellant's waist. The pouch was about eight inches long and four inches around. Shuman said that he grabbed the pouch because he thought that it could have contained a weapon. Shuman said that he unzipped the pouch because by feeling it, he could not tell whether it contained a weapon. Shuman said that he was concerned for his safety. Inside of the pouch, Shuman found about fifty rocks of crack cocaine. Shuman said that he had never seen appellant before that day.

Appellant testified, in effect, that he did not see the police pursuing him. He said that he walked to the house's front door and that he did not bang on it or holler. He said that he did not have anything in his hand when he was standing at the door. He also said that he did not give Shuman permission to unzip the pouch.

Jacquelyn Routt testified that she was inside the house when appellant was knocking on the front door. She said that she saw the police remove what appeared to be a sandwich bag of crack from the pouch.

By two points of error, appellant complains that the trial court erred in denying his motion to suppress, arguing that the police arrested him as a pretext to search him. He attacks the trial court's ruling under the Fourth Amendment and art. 1, § 9 of the Texas Constitution. The standard of review governing a trial court's ruling on a motion to suppress is whether the court clearly abused its discretion. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex. Crim.App.1979). The trial judge is the sole fact finder at the hearing on the motion to suppress and may choose to believe or disbelieve any or all of a witness' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980).

Article 14.01(b) of the Texas Code of Criminal Procedure provides that a peace officer may arrest a person without a warrant for any offense committed in his presence or within his view. Article 2.12(3) of the Texas Code of Criminal Procedure provides that city police officers are peace officers. Section 38.04(a) of the Texas Pe-

nal Code provides that a person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer attempting to arrest him or detain him for the purpose of questioning or investigating possible criminal activity." Section 38.04(b) provides an exception to the application of § 38.04(a) if "the attempted arrest is unlawful or the detention is without reasonable suspicion to investigate."

■ Here, appellant looked back at the marked patrol car, which was pursuing him, drove off of the shoulder of the road in order to pass two cars, accelerated, quickly turned into the driveway of a house, rushed to the house's front door, and wanted to get inside the house. This conduct showed that appellant knew that Cones and Shuman were policemen and were trying to arrest him or detain him for the purpose of questioning or investigating possible criminal activity. Section 38.04(b) does not negate the applicability of § 38.-04(a) because Cones and Shuman were attempting to arrest appellant for traffic violations, *i.e.*, appellant was speeding, he passed on the right, and his motorcycle's dealer tag appeared old. Given these facts, Officers Cones and Shuman, as peace officers, had probable cause to believe that the offense of evading arrest or detention had occurred in their presence or within their view. Therefore, under art. 14.01(b), *supra*, they were authorized to make a warrantless arrest of appellant.

Concerning Officer Shuman's search of the pouch, the United States Supreme Court has said that a custodial arrest of a person based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973); *Carrasco v. State*, 712 S.W.2d 120, 122 (Tex.Crim.App.1986).

■ Past cases have held that even if a warrantless arrest is justified under the

circumstances, evidence obtained pursuant to that arrest will not be admissible if the arrest was used merely as a "pretext" to support a search conducted after the arrest. Pretext seizures by law enforcement authorities are categorized as (1) those involving administrative or regulatory stops, which lack initial suspicion of wrongdoing on the part of the detainee, *see Webb v. State*, 739 S.W.2d 802 (Tex.Crim.App.1987); *Meeks v. State*, 692 S.W.2d 504 (Tex.Crim. App.1985), and (2) those situations in which an individual is suspected of having committed a criminal act and is either temporarily detained for investigation or arrested. *Gordon v. State*, 801 S.W.2d 899, 903 (Tex.Crim.App.1990). In this second category, the act or crime for which the person is suspected of committing is almost always different from the conduct allegedly committed which forms the basis for the detention or seizure. *Gordon*, 801 S.W.2d at 903. *See generally United States v. Causey*, 834 F.2d 1179 (5th Cir.1987). Appellant complains of the latter form of pretext arrest.

In *Goodwin v. State*, 799 S.W.2d 719, 726 (Tex.Crim.App.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991), the Court stated that "[t]he pretext arrest doctrine, however, has been used only to exclude evidence where the record clearly supports a finding that the police officers involved knew that the defendant was suspected of other specific crimes and arrested the defendant to further their investigation with respect to those crimes." For instance, in *Black v. State*, 739 S.W.2d 240 (Tex.Crim.App.1987),[2] officers wanted to question the defendant about a murder and followed him in an unmarked car. They saw him commit several traffic violations, so he was stopped and arrested. Since there was no probable cause to arrest the defendant for murder, and since the officers admitted that they stopped the defendant to question him about the murder, the arrest was held to be invalid as a pretext.

---

**2.** In *Gordon, supra,* a plurality of the Court of Criminal Appeals overruled *Black,* holding that there is no "pretext arrest" doctrine in Texas. A majority of the Court has not yet decided this issue.

Here, at no point did Cones or Shuman say that they wanted to stop and arrest appellant for any reason other than a traffic violation or evading arrest. Cones and Shuman acted lawfully in stopping appellant. Additionally, there was no indication that either Cones or Shuman had any knowledge that appellant was suspected of any other crimes. Shuman had never seen appellant before the day he was arrested. The facts, as developed in regard to appellant's stop and arrest, cannot be construed as constituting a pretext arrest. We hold that the trial court did not abuse its discretion in overruling appellant's motion to suppress. *See Goodwin,* 799 S.W.2d at 726. Appellant's points of error are overruled.

The trial court's judgment is AFFIRMED.